D. was convicted of violating 18 U.S.C. section 922X that forbids a juvenile from possessing a firearm. He was sentenced to a term of five years' probation with a specific condition that he reside at the Swan Valley Youth Academy for at least five years. The sentencing statute that goes along with section 922X is clear. It says that a juvenile shall not be incarcerated or placed into custody if they have no prior juvenile adjudications or convictions. It was our position in district court as well as our position here that he has no convictions or juvenile adjudications. The primary issue in this case is whether or not the Swan Valley Youth Academy is a custodial setting or, as the government says, merely a treatment facility. There isn't. And I think one of the reasons is that initially the court ordered him to go to a place in South Dakota. There wasn't much in the record about the place in South Dakota. No. I. Yeah. For a minimum of 18 months. So what you said earlier was that what did you say? The primary question in this case is what the nature of the of the custodial setting. Something like that. All right. I think I think. All right. So in other words, so you agree or would you agree to the statement if this Swan Valley is like a halfway house or a CTC, then it's a permissible condition. I think it probably would right now. But on the other hand, if it's more like jail or whatever you call a juvenile detention facility, then it's in your view not permitted in the statute. Right. Yes. So as Judge Pius indicates, then don't we have to know what the conditions of confinement at Swan Valley are to make that determination? Or or doesn't the district court have to know that the district court always apparently said that he at least sent one other juvenile to the same place. Right. Yes. According to your letter. But I mean, is it a customary place of detention for juveniles from the district of Montana? You know, I think it is. Or or it has or it has gotten to be. So it's a fair assumption that the district judge is aware of the conditions of confinement, the programs, whatever they have there at Swan Valley. He should be. I don't I don't know if he's actually visited the area. But how do you find out about Swan Valley? Probation officer told probation officer, from what I understand, told him about the Swan Valley Youth Academy, which I think had pretty much just opened and started accepting this open about the time it had been open before as simply a state facility. And at one time it was an adult facility, an adult boot camp facility that shut down. And it's real. It still is a state facility. It's licensed by the state. There are federal prisoners there, however. Well, I mean, do you know anything about it? I do. Is there a fence around the guards? You know, there there are. I've been on the campus. There's no fence around it. But when the juveniles get there, they have their head shaved. They have to wear uniforms. They march to to go eat any sort of meals, marched wherever they're going. So a couple of kind of environment like a boot camp. It's like a boot camp. They don't stay there all the time. Yes, they do. They're required to stay there. There are three levels. And during the first two levels, they have to stay there. On the third level, they can get passes to leave. But no, they are not free to leave the campus. When you say passes, you mean short term passes like two or three days or something like that to go see their family. Yeah. And in fact, there's another appeal involving this very same issue that will be argued next month with a few wrinkles. But stop me if you don't want me to go too far over the record. But that juveniles is his uncle died. This was an uncle that raised him and he was not allowed to go to the funeral. He had to remain at the. Well, OK. Another bill that raises this issue. What issue are you talking about? What kind of what kind of facilities one value? Yes. And whether or not they can leave. I mean, is it possible that they have different kinds of programs that is to say that this is replacing somebody in custody. You know, the custodial sentence goes to a treatment sentence. Well, I don't know in the juvenile context whether it really is such a right. Kids are supposed to get treatment. Right. But assuming this had been a custodial sentence, you know, if they have different kinds of programs, you've been to one that is specifically geared for your kind of treatment. They psychological, you know, psych programs and mental health programs. My understanding from talking to the people there that they try to individualize treatment. One juvenile may have a drug problem, another juvenile may have a different problem. But insofar as the basic program is concerned, there's no difference on whether or not you're in custody or whether or not you're there as a conditional probation. Now, you said the probation officer may have may have informed the district court about this facility. But I read the probation report. There was not a whole lot in the probation report about the programs at this facility or what this juvenile would be encountering, other than that he needed some some some solid supervision given his past record. And I don't I don't think that there's really anything in the record indicating exactly what the probation officer told the judge. I can tell you that I know that the probation officer speaks with the judge prior to sentencing and they go through the record. They do it privately. They do it privately. Right. Right. And you have one other issue that you'd raised in the appeal. That is, you labeled it an issue of whether or not this has been an indeterminate sentence because the condition is for a minimum of 18 months. For a minimum of 18 months, up to five years. Right. But doesn't that mean, as I understand, if the probation officer wanted him to continue beyond 18 months, wouldn't he have to go back to the district court judge under, you know, like a modification? I don't think so. I don't think the way that the judgment reads, because the judgment says at least 18 months, which to me puts full discretion in the probation department as well as Swan Valley Youth Academy. Oh, but it wouldn't. But you would have the right to go into court and say, you know, file a petition for release or something like that, because 18 months has passed. And he should be eligible for release. Right. And then either that or the judge would have to make a new finding. In other words, it's within your control to require the judge to make another determination, isn't it? Certainly. I'm free to go into court. But in fact, you can go on even before 18 months expires. You can always move to modify a condition of probation, right? Yeah. The question is, is whether or not the judge will actually do that. And, you know, I objected to this already saying that you're placing him in custody and besides replacing him into a situation where he's going to serve more than 12 months. Well, who is this? Did the judge respond to the argument about, well, this is this amounts to an indeterminate sentence? No, Your Honor. And I'm trying to think back. That may be that may be an argument. It was one of two arguments, either that one or the one that exceeded the statutory maximum that was not raised in the district court. And I've asked this Court to review under plain error. All right. If no one has any questions, I'll save my remaining time. Thank you. Good morning. My name is Lori Sook. I'm an assistant United States attorney from Great Falls, Montana. The issue before the Court has changed, I think, since the initial briefing. The issue responded to by the United States is whether this was, in fact, a sentence that the Court could impose. And that is an issue, I think, that this Court could have addressed, but seems to have been conceded if Swan Valley is an appropriate facility. But the issue that I don't think is conceded was you asked Mr. Nass. My understanding of his answer to the question was if Swan Valley is an appropriate community corrections facility, then would this sentence be okay? And I thought he said yes. Okay. I see. To the question of if it's an appropriate facility. Exactly. All right. I'm sorry. Go ahead. Now, the second issue, though, which is what you have discussed with Mr. Nass today, which is whether this is an appropriate facility, unfortunately, I don't believe this Court is in a good position to decide because we've never addressed that issue in the underlying court. What happened here is you read from the brief. Well, he did argue that it did. I understand he was arguing before the district court in here in his brief here that this was just a way of getting around a one-year limitation. I understand. And I – and that is, I think, within the first issue, the framing of whether the Court could do what it did here, which is to make a condition of probation some sort of placement. No, no, no. But it's implicit in the argument that while you're just trying to evade the one-year maximum term of imprisonment by calling it probation, it's implicit in that argument that this is imprisonment. It is, Your Honor. But what I'm saying is the issue regarding whether Swan Valley is an appropriate facility, the record is really void of any – any facts of the case. And the reason for that is because Swan Valley wasn't designated until well after the sentencing proceeding was completed. It certainly is, Your Honor. You can't blame that on the appellant. You can't except that I think we could have made a motion in the district court at that point that this, as soon as his transfer was made from our home to Swan Valley, we could have had an objection and a fact-finding because the reality is this in the District of Montana, from what I know. We have two Federal juvenile facilities that we use. The custody facility is what was referenced in the supplemental letter, the Rio facility in Galen. That is a concertina wire cell facility. Swan Valley Youth Camp is something less than that or has always been deemed to be less than that. It is a boot. Kennedy, I'm sorry to interrupt you, but if it's less than that, doesn't mean it's not imprisonment, you know? You know, it could be like a, you know, like a Federal prison farm, which is still a prison. It may be, Your Honor, but we don't know that. We don't have any. What's the remedy then? Well, in this case, I think that if that is the issue that's now before the Court, we have to remand back for fact-finding to determine whether this facility actually is a community corrections treatment center and not imprisonment. Because this is a facility I am familiar with as well. It is not a cell facility with wire, and there is an ability for, in different phases, for the persons to leave. Now, it isn't in the community of this juvenile. We don't have a juvenile facility available in Cutbank, Montana, where he was living. So there's going to be some issues that we have to address as to whether it meets within a community corrections center versus imprisonment. I don't know how you can decide that. You know, it's pretty clear that the, if you want to call it treatment, that the district court had some kind of treatment in mind in terms of, you know, this kid getting his act together and getting a little discipline, you know, if you want to call that that kind of socialization treatment. But so it's clear he had that objective question. Exactly. Whether he could do it by sending it, sending the boy to Swan Valley, right? There is no doubt, Your Honor, that the judge had fashioned a sentence to meet the needs of this juvenile. I don't think there's any doubt about that. The pre-sentence report is before you. Right. You see what was lacking in his life, and it seems that this facility is perfect for that in terms of a structured environment, treatment abilities. Now, the issue has been raised as to whether it crosses into imprisonment. What I can tell you, all I can tell you is what I know. This is not our secure facility for juveniles in the District of Montana. That is the Rio Galen facility. It's not your, it's not your maximum security facility. It's not, if that is an appropriate term, it's not that. But if that is the issue that's been addressed and raised here, there's not enough in the record. What about the indeterminate sentencing issue? The law that I've looked at with respect to that, it involves sentences of imprisonment. In this case, I think my response, which I didn't do well in the brief, but I thought of later, is that you can modify conditions of probation. Unlike changing sentences. What happens at the end of 18 months? Just explain that to me. I mean, it's current greatest sentences structure. Well, I can only assume. But I think what was, what I understood the judge's ruling to be is that he wanted him to stay there for 18 months. And if there was in need of additional time, that would be something that he would look at at that time. So, sort of a modification. Yes, that's how I understood it. The probation would require some action by the court. Some action by the court. That's what I understood it to be from the, from his dispositional statement at the sentencing hearing. Actually, in the modification letter, when they switched him from Huron, South Dakota, the main facility there to Swan Valley, the probation officer refers to it simply as a set term of 18 months.  A minimum of 18 months. Yeah, I did note that. I think, though, that the disposition to Huron, South Dakota, to the Our Home program would carry, even despite the language of the probation officer. And this, the proceeding of this case, as you've noted, there was a program set up that was, I think, more of a typical residential treatment center in the Our Home program. But the realities were the designation just didn't come through. At that point, let me ask you this question. Sure. Is there some kind of a, you know, like an objective description of this Swan Valley floating around somewhere like, you know, in a probation officer's handbook or something like that? Or you know what I mean? Yes, I do know what you mean. And I know that the probation, I've looked at the brochures. You know, I don't know the answer to that question. I mean, is there something like that that we could look at without having to send us back down to the district court? You know, I'm not I wouldn't ask anybody to give up their rights. But I mean, if it's I would I would think certain of these things are would not be controverted in terms of, you know, the condition. Certainly wouldn't be. I mean, the rules that they maintain, you know, for their. We could certainly look into that, Your Honor, because most of these facilities have pamphlets. I've, in fact, seen it's been a few years, but I've seen some write up about it. We could certainly hold this in abeyance for a period of time to try and submit something to your honors, if that is your wishes. Well, I think you two should either one get together and see if you can agree on some kind of acceptable description for both sides as to what this facility is and what it does. Or if you can't, then I suggest that, you know, if you think there's something of which you can take judicial notice, such as a Web site or something, then you give us that information individually. All right. And then we'll we'll look at that and decide after that whether we need something more. Miss, one other thing. Certainly. I gathered from where this order was framed that just the accession to this facility and pretty much left it up to the facility to determine what kind of program he was going to participate in. Well, and I don't think that that's how it happened, but I don't know that I can point in the record to anything to advise you of that. But let me tell you what I think has happened. The probation officers are very much in tune to how our juveniles are sentenced in the District of Montana, and I do not think it's left up to the facility. It is in direct discussion with the probation officers who have a very direct link to Judge Haddon. It would surprise me greatly that Judge Haddon has not visited this facility and knows all of the ins and outs of it, not just through the advice of the probation officer, but he is very hands-on in terms of the juvenile sentencings in our district. We have a number of them, lots more than most districts. And I think that this facility, my knowledge of it, is that they are in direct contact with our probation office. It's one of the two facilities they work with, and they really do individualize for these juveniles. That would be my understanding from past cases. It would surprise me if it wasn't that way this time as well. Thank you. Thank you. Remodel. Your Honors, I do have in my file, it's apparently a brief description of what the Swan Valley Youth Academy entails. And if counsel wouldn't object. All right. If she doesn't object, then maybe you can give it to the clerk after argument, all right? Okay. All right. Go ahead. Okay. Your Honors, I would, I guess, make three quick points. The government seems to fault Mr. Dement and I for not asking the district court for an additional hearing after he went to the Swan Valley Youth Academy. But I think one of the things that the court needs to look at is the procedural summary of what happened here. When he went into custody, we objected to it. He overruled the objection. We filed an emergency petition with this court. This court sent it back down. It went down there. It languished for a week or so. Mr. Dement was then sent to the Swan Valley Youth Academy. And once he was sent there, it was denied his moot because he was no longer in a jail as he had been. So we were trying to get him out for a couple of months. And we were trying to raise these issues, albeit maybe in a little different context. But through our emergency motions. I'd also, and it's spelled out in my reply brief on the issue of whether or not this facility is a community confinement center. I talked about what the cases say, what the sentencing guidelines define as community confinement. I don't think that under any view, if one uses those definitions, that one can come to the conclusion that Swan Valley Youth Academy is also community confinement. And as that term is formally understood, they're not getting any further. Thank you. All right. Thank you. We thank both counsel. This case is submitted for decision.
judges: Reavley , Tashima, Paez